# MARTIN v. WEST.

ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

No. 33. Argued November 2, 1911.—Decided December 4, 1911.

Whether a state statute providing remedies for damages to property within the State includes those to specified classes of property is for the state court to determine, and this court accepts the construction so given. *The Winnebago*, 205 U. S. 354.

Whether a tort be maritime or non-maritime must be determined by the character and locality of the injured thing at the time the tort was committed, and subsequent facts as to location furnish no criterion. *Johnson* v. *Chicago & Pacific Elevator Co.*, 119 U. S. 388.

Where a vessel by its own fault collides with and injures a bridge which is essentially a land structure and which is maintained and used as an aid to commerce on land, the tort is non-maritime.

The remedy for a non-maritime tort provided by the state statute

can be pursued in the state court against the vessel committing it, even though the statute gives a lien on the vessel.

When the interruption of interstate commerce by reason of the enforcement of a state statute otherwise constitutional is incidental only, it will not render the statute unconstitutional under the commerce clause of the Constitution.

A state statute which gives a lien upon all vessels, whether domestic or foreign and whether engaged in interstate or intrastate commerce, for injuries committed to persons and property within the State and providing that the lien for non-maritime torts be enforced in the state courts and which is not in conflict with any act of Congress, does not offend the commerce clause of the Constitution because it incidentally affects the use of a vessel engaged in interstate commerce; and so held as to §§ 5953 and 5954 of the Code of the State of Washington.

51 Washington, 85, affirmed.

THE facts, which involve the construction and constitutionality of certain statutes of the State of Washington, are stated in the opinion.

*Mr. John Trumbull,* with whom *Mr. Aldis B. Browne, Mr. Alex. Britton* and *Mr. Evans Browne* were on the brief, for plaintiffs in error:

The tort was maritime. Locality fixes the jurisdiction. *The Plymouth,* 3 Wall. 20.

The substance and consummation of the injury complained of must have taken place on the high seas, or navigable waters, in order that the admiralty should have jurisdiction. *The Plymouth,* 3 Wall. 20; *In re Phenix Ins. Co.,* 118 U. S. 610; *Johnson* v. *Chicago Elevator Co.,* 119 U. S. 388; *Cleveland &c. R. R. Co.* v. *Cleveland Steamship Co.,* 208 U. S. 316; *Duluth Superior Bridge Co.* v. *Steamer Troy,* 208 U. S. 321.

In all these cases the wrong or negligence occurred on navigable waters, but the injury and damage was consummated on the land. If, therefore, the wrong or negligence originates on the land, but the substance and consummation of the injury and damage—in other words,

the cause of action—takes place upon the high seas or navigable waters, the admiralty must have exclusive jurisdiction. *Hermann* v. *Port Blakeley Mill Co.*, 69 Fed. Rep. 646.

The wrong complained of is the negligence in navigating the vessel, so that she ran against the supporting piers of one of the spans of the bridge. The substantial damage consisted in (some hours thereafter) the span falling into the river and being broken up and almost wholly destroyed. See *The City of Lincoln*, 25 Fed. Rep. 835, and *Riley* v. *Phila. & R. Ry. Co.*, 173 Fed. Rep. 839.

A State cannot by a lien law interrupt interstate and foreign commerce where no express statutory authority for such result can be found in the Federal enactments. *The Roanoke*, 189 U. S. 185; *Hall* v. *De Cuir*, 95 U. S. 485, 498.

Even if the Supreme Court of Washington has held the statute of that State applicable to sustain the attachment of the vessel thereunder for the tort alleged, such construction by that court cannot be accepted as binding in this court. *The Chusan*, 2 Story, 455; *Guffey* v. *Alaska & P. S. S. Co.*, 130 Fed. Rep. 271, 278.

A statute is to be so construed, if possible, as to leave it a valid enactment.

The state law either does not include the case of injury to a bridge by a foreign vessel engaged in interstate commerce or, if it does, it is clearly unconstitutional and void.

Where it is necessary to determine whether or not the rights secured by the Constitution or some law of the United States have been violated by a state statute or a municipal ordinance, this court will place its own independent construction upon such state law. *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436; *Proprietors of Bridges* v. *Hoboken Land & Improvement Co.*, 1 Wall. 116; *Delmas* v. *Merchants' Mutual Ins. Co.*, 14 Wall. 661; *Butz* v. *Muscatine*, 8 Wall. 575; *Northwestern University* v. *Illinois*,

99 U. S. 309; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Huntington* v. *Attrill,* 146 U. S. 657; *Mobile & Ohio Ry. Co.* v. *Tennessee,* 153 U. S. 486; *Scott* v. *McNeal,* 154 U. S. 34; *Easton* v. *Iowa,* 188 U. S. 220.

The Washington statute (§§ 5953 and 5954) was not intended to include, and does not include in its terms, injuries to a fixed structure like a bridge; nor does it give a lien on a foreign vessel engaged in interstate commerce for such injuries.

*Mr. W. C. Keegin* for defendant in error submitted:

The case is one that was within the jurisdiction of the state court, and the admiralty court has no jurisdiction thereover. *The Savannah,* 21 Fed. Cases, No. 12,384; *City of Milwaukee* v. *Curtis,* 37 Fed. Rep. 705; *The John C. Sweeney,* 55 Fed. Rep. 540; *The Poughkeepsie,* 162 Fed. Rep. 494, aff'd *per curiam,* 212 U. S. 557; *The Plymouth,* 3 Wall. 20; *In re Phenix Ins. Co.,* 118 U. S. 610; *Johnson* v. *Chicago &c. Co.,* 119 U. S. 388; *Cleveland & R. Ry. Co.* v. *Cleveland Steamship Co.,* 208 U. S. 316; *Duluth Bridge Co.* v. *Steamer Troy,* 208 U. S. 322.

The statute sufficiently embraces this case. Its plain and simple language renders all steamers and vessels liable for injuries committed by them to persons or property within the State, or while transporting such persons or property to or from the State.

Provisions of state statutes like those here in question are valid and effective when they do not intrench upon the domain of the admiralty. *Johnson* v. *Chicago &c. Co.,* 119 U. S. 388; *Knapp* v. *McCaffrey,* 177 U. S. 638; *Iroquois Trans. Co.* v. *De Laney Co.,* 205 U. S. 355; *Davis* v. *Cleveland &c. Ry. Co.,* 217 U. S. 157; *Berwind-White* v. *Metropolitan S. S. Co.,* 166 Fed. Rep. 782, aff'd 173 Fed. Rep. 471. See also *Olsen* v. *Birch & Co.,* 133 California, 479; *The Victorian,* 24 Oregon, 121; *Scatcherd Lumber Co.* v. *Rike,* 113 Alabama, 559; *Globe Iron Works* v. *Steamer.*

100 Michigan, 583; *Reynolds* v. *Nelson,* 116 Wisconsin, 483.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This case arose out of the collision, on May 7, 1906, of the steamer *Norwood,* owned and enrolled at San Francisco, with a supporting pier of a toll drawbridge between Aberdeen and South Aberdeen, in Chehalis County, Washington, over the Chehalis river, a navigable stream flowing into an arm of the Pacific Ocean. The pier stood upon the bed of the river, in navigable water, and the bridge was maintained and used as a connection between highways on either side of the stream, and not as an aid to navigation. The vessel was engaged in interstate commerce, was proceeding under her own motive power, and so struck the pier as to do serious injury to it and to cause one span of the bridge to collapse and fall into the river within a few hours thereafter. The cause of the collision was the negligent management of the vessel by her master and owners.

In a suit brought in the Superior Court of Chehalis County, by the owner of the bridge against the master and owners of the vessel, the former asserted and sought to enforce, under a statute of the State (Bal. Code, §§ 5953, 5954), a lien against the vessel for his damages so sustained; caused the vessel to be seized and detained by a temporary receiver, until released by the substitution of a bond by the master and owners in place of the vessel; and recovered a judgment, assessing his damages at $13,751.89 and establishing the lien so asserted. The judgment was affirmed by the Supreme Court of the State, 51 Washington, 85, and its decision is now called in question upon various grounds, which, in view of our prior decisions, require but brief notice.

The pertinent portions of the state statute are as follows:

"Sec. 5953. All steamers, vessels, and boats, their tackle, apparel, and furniture, are liable,—

\*    \*    \*    \*    \*    \*    \*    \*

"6. For injuries committed by them to persons or property within this state, or while transporting such persons or property to or from this state.

"Demands for these several causes constitute liens upon all steamers, vessels, and boats, and their tackle, apparel, and furniture, and have priority in their order herein enumerated, and have preference over all other demands; but such liens only continue in force for the period of three years from the time the cause of action accrued.

"Sec. 5954. Such liens may be enforced, in all cases of maritime contracts or service, by a suit in admiralty, in rem, and the law regulating proceedings in admiralty shall govern in all such suits; and in all cases of contracts or service not maritime, by a civil action in any district court of this territory."

1. It is objected, that the statute does not include injuries to a fixed structure like a bridge, but only to persons or property while being transported, or, at most, to movable property susceptible of being transported; and does not include a foreign vessel, such as the *Norwood*, but only domestic vessels. But of this it is enough to say, the Supreme Court of the State has construed the statute otherwise, and the case is one in which we accept that construction. *The Winnebago*, 205 U. S. 354; *Smiley* v. *Kansas*, 196 U. S. 447; *Gatewood* v. *North Carolina*, 203 U. S. 531.

2. It next is insisted that the injury, on account of which the lien was asserted, was a maritime tort, and therefore the cause of action was within the exclusive admiralty jurisdiction of the courts of the United States; the argument being that, as the collapsing span of the bridge fell into the river, it was there that the substance and consummation of the wrong took place.

It may be that the damage ensuing from the collision was aggravated by the fact that the span fell into the stream and was subjected to the force of the current and submerged in the water, but, if that be so, it furnishes no criterion for determining whether the tort was maritime or non-maritime, because that question must be resolved according to the locality and character of the injured thing—the bridge with its spans and supporting piers—at the time of the collision. It was then that the causal influence of the negligent management of the vessel took effect injuriously and gave rise to a cause of action, and what followed is important only as bearing upon the extent of the injury and resulting liability. This is well illustrated in *Johnson* v. *Chicago & Pacific Elevator Co.*, 119 U. S. 388. There, the jib boom of a schooner, in the Chicago River, was negligently driven through the wall of a warehouse on adjacent land, whereby a large quantity of shelled corn, stored in the warehouse, ran out into the river and was lost. It was held that the substance and consummation of the wrong took place on land and that the tort was non-maritime, although the damage inflicted consisted chiefly of the loss of the corn. Other applications of the same principle are shown in *The Strabo*, 90 Fed. Rep. 110, and *The Haxby*, 95 Fed. Rep. 170.

As the bridge was essentially a land structure, maintained and used as an aid to commerce on land, its locality and character were such that the tort was non-maritime, *The Plymouth*, 3 Wall. 20; *The Blackheath*, 195 U S.. 361; *Cleveland Terminal and Valley Railroad Co.* v. *Cleveland Steamship Co.*, 208 U. S. 316; *The Troy*, 208 U. S. 321; and, consequently, it was admissible to pursue in the state court the remedy provided by the state statute, even though that law gave a lien on the vessel. *Johnson* v. *Chicago & Pacific Elevator Co., supra; Knapp, Stout & Co.* v. *McCaffrey*, 177 U. S. 638; *The Winnebago, supra.*

3. Lastly, it is contended that the statute, as inter-

preted by the Supreme Court of the State, offends against the commerce clause of the Constitution of the United States, in that the creation and enforcement of such a lien against a foreign vessel engaged in interstate commerce is an unwarranted interference with such commerce.

We do not perceive in the statute, as interpreted and applied in the present case, any basis for this contention. As interpreted, the statute embraces all vessels, whether domestic or foreign and whether engaged in intrastate or interstate commerce, and therefore it cannot be said that its purpose is to regulate the latter. Its enforcement may occasionally and temporarily interrupt or prevent the use of a vessel in such commerce, as in this instance, but such an interference is incidental only, is almost inseparable from the compulsory enforcement of liabilities of the class in question, is not in conflict with any regulation of Congress, and does not in itself offend against the commerce clause of the Constitution. *Johnson* v. *Chicago & Pacific Elevator Co.*, 119 U. S. 388, 400; *The Winnebago*, 205 U. S. 354, 362; *Davis* v. *Cleveland, Cincinnati, Chicago & St. Louis Railway Co.*, 217 U. S. 157, 179.

We think the questions presented were rightly decided by the Supreme Court of the State, and its judgment is affirmed.

*Affirmed.*