## TAYLOR et al. v. LAWSON, Deputy Com'r.

District Court, E. D. South Carolina.

July 12, 1932.

166

John I. Cosgrove and Paul M. MacMillan, both of Charleston, S. C., for plaintiffs.

Henry E. Davis, U. S. Atty., of Florence, S. C., and Mitchell & Horlbeck, of Charleston, S. C., for defendant.

ERNEST F. COCHRAN, District Judge.

The plaintiffs brought this bill by virtue of section 921, USCA title 33, to review an order of the deputy commissioner made under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, approved March 4, 1927, 44 Stats. 1424, 33 USCA §§ 901–950 (hereinafter referred to as the Compensation Act), and for a mandatory injunction to compel the deputy to proceed to make an award in favor of the plaintiffs. The defendant has filed an answer which admits the facts and merely denies the conclusions of law stated in the bill, and the case has been heard upon the bill and answer. The facts, as to which there is no dispute, are substantially as follows:

The Charleston Dry Dock & Machine Company (hereinafter referred to as the Dry Dock Co.) was engaged in the construction of ships, and one Robert A. Taylor was one of its employees. The Dry Dock Co. had a contract with the government for the construction of a lightship. At the time of the accident hereinafter referred to, the lightship had been launched, was afloat and in a dry dock, and had been about 96 or 97 per cent. completed. A master and engineer had been placed on the vessel by the government, and were in charge at the time of the accident; but the vessel had not been delivered to or accepted by the government. Although unfinished, the vessel was capable then of navigation. The accident occurred on February 27, 1930. The contract to build the lightship was not completed until some time after that date, and the ship was not accepted by the government until April, 1930. Taylor, whose duties were those of a driller, was on February 27, 1930, engaged in this employment on the lightship in the dry dock and sustained injuries which resulted in his death. The plaintiffs, who are the father and mother of the deceased, Robert A. Taylor, filed in the office of the deputy commissioner a claim for compensation under the Compensation Act, and this claim was contested by the Dry Dock Co., the employer, and the United States Casualty Company, its insurance carrier, under the said act. The deputy commissioner held that under the facts of the case, it did not come within the provisions of the Compensation Act, and that the United States Employees' Compensation Commission had no jurisdiction.

The defendant contends that the deputy commissioner had no jurisdiction for two reasons:

First. Because the vessel not having been completed and the claim being not for a tort but for a mere injury, admiralty would have no jurisdiction and the Compensation Act would not apply. This ground, however, was not stressed in argument.

Second. Because inasmuch as the vessel had not been completed, Taylor the employee, was therefore not engaged in a maritime employment and the case therefore was not within the terms of the Compensation Act.

It is conceded by the parties that there is no case directly in point upon the specific problem presented. The parties, however, seek to sustain their respective positions from certain general principles of admiralty jurisdiction and the particular terms of the act. Before discussing the specific question presented, it is advisable to consider a few general propositions concerning admiralty jurisdiction, and consider also certain pertinent sections of the Compensation Act.

It is now the settled rule that a contract for the construction of a new vessel is a nonmaritime contract. New Bedford Dry Dock Co. v. Purdy, 258 U. S. 96, 42 S. Ct. 243, 66 L. Ed. 482.

The Supreme Court has decided that the

rule that contracts for the construction of ships are nonmaritime and not within the admiralty jurisdiction applies to contracts for the work and material necessary to finish a partly constructed vessel which has been launched. Thames Towboat Co. v. The Francis McDonald, 254 U. S. 242, 41 S. Ct. 65, 65 L. Ed. 245.

The general doctrine is that in contract matters, admiralty jurisdiction depends upon the nature of the transaction; but in tort matters, upon the locality. Grant Smith-Porter Ship Co. v. Rohde, 257 U. S. 469, 476, 42 S. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008, and cases there cited.

The Supreme Court also holds that the general admiralty jurisdiction extends to a proceeding to recover damages resulting from a tort committed on a vessel in process of construction, when lying in navigable waters within a state. In the case just cited, it was held that the admiralty court would have jurisdiction of an action for a tort by a carpenter injured through the employer's negligence while engaged in construction work on a ship nearly completed and launched and lying in the navigable waters of the United States. Grant Smith-Porter Ship Co. v. Rohde, supra, pages 469, 477, 478 of 257 U. S., 42 S. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008.

It is not altogether clear just what the defendant means by his first objection; and, as stated, it was not stressed in argument. I assume, however, that what is meant is that although admiralty would have jurisdiction of suits for torts committed upon partially completed vessels lying in navigable waters, nevertheless this proceeding not being a claim for a tort, but simply a claim for an accidental injury, that admiralty would have no jurisdiction. I cannot accede to this proposition. There is no doubt whatever that if Taylor or his representatives were suing for a tort, admiralty would have jurisdiction. There can also be little doubt that Congress would have the power in such cases to change the rules governing tort actions and provide for accidental injuries. Compare L'Hote et al. v. Crowell (C. C. A. 5th) 54 F.(2d) 212, and Nogueira v. N. Y., N. H. & H. R. R. Co., 281 U. S. 128, 50 S. Ct. 303, 74 L. Ed. 754; also the recent case of Crowell v. Benson, 285 U. S. 22, 41, 52 S. Ct. 285, 76 L. Ed. 598.

The defendant's second objection presents a more difficult problem. The defendant's argument may be stated briefly as follows: The Compensation Act applies only to those employers whose employees are engaged in *a maritime employment*. The contract for the construction of a new ship is not a maritime contract, and does not become a maritime contract, though the ship may be launched and her construction finished in navigable waters. It is therefore argued that the employee Taylor was not engaged in a maritime employment, and therefore not within the terms of the act.

The Compensation Act is one of the results of the modern liberal trend of thought towards the doctrines in tort cases as between employer and employee. It was designed to remedy the unfortunate situation of workmen and relieve them of the strict rules governing tort actions and provide for compensation for injuries received in the course of their employment "irrespective of fault as a cause for the injury" (sections 904, 905, USCA title 33). It is a humane act, highly remedial, and should be liberally construed. Pocahontas Fuel Co. v. Monahan (C. C. A. 1) 41 F.(2d) 48, 49; L'Hote et al. v. Crowell (C. C. A. 5th) 54 F.(2d) 212, 214.

Paragraphs 3 and 4 of section 902 of the Compensation Act are as follows:

"(3) The term 'employee' does not include a master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.

"(4) The term 'employer' means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any dry dock)."

The Compensation Act does not define the term "employee" further than it is defined in the above paragraphs.

By paragraph (a) of section 903 of the Compensation Act, it is provided that compensation shall be payable in respect of disability or death of an employee, but only if the disability or death resulted from an injury occurring upon the navigable waters of the United States (including any dry dock), and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided for by state law. This section further provides that no compensation shall be payable in certain cases which are not in issue here.

Section 905 of the Compensation Act provides that the liability of the employer

as prescribed in the act shall be exclusive and in place of all other liability, etc.

By section 920 of the act, it is provided that in any proceeding for the enforcement of a claim for compensation under the act, it shall be presumed, in the absence of substantial evidence to the contrary, that the claim comes within the provisions of the act.

There is no compensation law in South Carolina. We are relieved therefore of any consideration of those cases in which a state compensation law may be applicable upon navigable waters.

[5, 6] The plaintiffs have brought themselves within the terms of the act in all respects unless the defendant's contention is correct, that the deceased was not engaged in maritime employment. While, as I have already indicated, the question is not free from difficulty, nevertheless I have come to the conclusion that the plaintiffs' claim should be sustained. There is no doubt that if the plaintiffs had brought a suit for a tort for negligence of an employer, admiralty would have jurisdiction. Compare Hoof v. Pacific American Fisheries Co. (C. C. A. 9th) 279 F. 367; L'Hote et al. v. Crowell (C. C. A. 5th) 54 F.(2d) 212; Netherlands American Steam Navigation Co. v. Gallagher (C. C. A. 2d) 282 F. 171; Colonna's Shipyard Co. v. Lowe (D. C.) 22 F.(2d) 843; Rohde v. Grant Smith Porter Co. (D. C.) 259 F. 304; Grant Smith-Porter Co. v. Rohde, 257 U. S. 469, 42 S. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008; Nogueira v. N. Y., N. H. & H. R. Co., 281 U. S. 128, 50 S. Ct. 303, 74 L. Ed. 754. There is no doubt that the plaintiffs' claim for compensation comes within the spirit of the law. There is no doubt that Congress can provide for compensation for an injury occurring upon the navigable waters of the United States. The act should be liberally construed to further the humane and liberal purposes which lie behind all compensation acts and are in line with modern concepts. The deceased was certainly engaged in an employment upon a vessel lying in the navigable waters of the United States. That vessel had been launched and was subject to admiralty jurisdiction. I cannot think that it was the intention of Congress to exclude such a case from the operation of this act. The sole reliance of the defendant to sustain this point is upon the contract between the Dry Dock Co. and the government for the construction of the ship, and it is said that because that contract still remained a nonmaritime contract, the employment of the deceased could not be said to be maritime. I do not think that this is a necessary or logical consequence. The contract between the Dry Dock Co. and the government may be determinative of the forum of any suit on that contract, but it cannot be conclusive of the rights of the plaintiffs and the deceased as against the Dry Dock Co. The rights of the decedent and his representatives are to be determined by the contract between him and the Dry Dock Co. and the duties he was performing for that company and the place where those duties were performed. The employer in this case sent the employee to work upon a vessel lying in the navigable waters of the United States, a place subject to admiralty jurisdiction; and when he was engaged in that work, it seems to me it would hardly be common sense to say that he was not engaged in the performance of a maritime work.

For these reasons, the order of the deputy commissioner denying jurisdiction must be reversed and the case remanded, with a mandatory injunction to proceed in accordance with the terms of the act.

Let the attorneys for the plaintiffs prepare a final decree in accordance with the foregoing opinion, and serve a copy thereof upon the attorneys for the defendant and submit the same to the court for signature upon four days' notice.